IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ANTHONY NELSON )
)
v. ) NO. 2:12-0120
)
W.B. MELTON, et al. )

TO: Honorable Kevin H. Sharp, District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered January 10, 2013 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Motion for Summary Judgment (Docket Entry No. 37) of Defendants W. B. Melton, Shannon Harvey, Ethan Bean, and Donnie Allred, to which the plaintiff has responded in opposition. See Docket Entry Nos. 53-54. Set out below is the Court's recommendation for disposition of the motion.

## I. BACKGROUND

The plaintiff is currently an inmate of the Tennessee Department of Correction ("TDOC") confined at the Morgan County Correctional Complex ("MCCX"). He filed this action pro se and

in forma pauperis on December 26, 2012, under 42 U.S.C. § 1983 seeking a declaratory judgment, injunctive relief, nominal damages, and punitive damages for violations of his civil rights alleged to have occurred during his previous confinement at the Overton County Justice Center ("Justice Center") in Livingston, Tennessee. Named as defendants to the action are Overton County Sheriff W. B. Melton, Justice Center Administrator Shannon Harvey, Officer Ethan Bean, and Officer Donnie Allred.

The plaintiff was taken into custody at the Justice Center on or about September 14, 2012, and remained confined there until he was transferred to the Putnam County Sheriff's Department on or about March 13, 2013.[1] In his Complaint, he sets out four separate claims based on events that occurred at the Justice Center. First, he alleges that, on two occasions, Defendant Bean sprayed mace through or around a broken window in the plaintiff's cell without warning or provocation causing the plaintiff and his cell mates to "get mace in our lungs and eyes." See Complaint (Docket Entry No.1), at 6. He alleges that Defendant Allred "participated" in the first of the mace spraying incidents. Id. Second, the plaintiff, who asserts that he is an insulin dependent diabetic, alleges that his right to adequate medical care was violated because he was not given the required diet for his condition, because correctional officers, not nurses or medical staff, passed out medication to inmates at the Justice Center, and because there was not an emergency intercom in his cell. Id. Third, the plaintiff alleges that, for a period of four or five days, he was kept in a cell in which the toilet was not functioning and was filled with urine and feces. Id. at 7. Fourth, the plaintiff alleges that he was taken from his cell on November 5, 2012, to have his blood sugar checked at a time that his pants had been sent out to be washed. He contends that he was forced to leave his cell in his

---

[1] See Defendants' Statement of Undisputed Facts (Docket Entry No. 39), at ¶ 47.

2

underwear and that, although he was permitted to wrap a blanket around himself, the blanket slipped off at one point and he was embarrassed. Id.

## II. THE DEFENDANTS' MOTION

The Defendants argue that they are entitled to judgment as a matter of law on all claims because the plaintiff cannot set forth evidence sufficient to show that he suffered the deprivation of any right protected by the United States Constitution. The Defendants also raise the affirmative defense of failure to exhaust available administrative remedies and assert qualified immunity to any damage claims. In support of their motion, the Defendants rely on the declarations of Defendant Ethan Bean (Docket Entry No. 41), Defendant Donnie Allred (Docket Entry No. 42), and Defendant Shannon Harvey (Docket Entry No. 44), as well as copies of various documents related to the plaintiff and to his stay at the Justice Center. See Docket Entry Nos. 40-1 to 40-14, 44-1 to 44-10, and 45-1 to 45-7.

With respect to the plaintiff's first claim, the Defendants admit that officers sprayed short bursts of a chemical spray[2] into cells at the Justice Center on two occasions in September 2012, but contend that this occurred because inmates were observed passing contraband tobacco through broken windows in the cells and sticking their hands through broken windows and the officers were attempting to stop this conduct. The Defendants deny that any inmates, including the plaintiff, were

---

[2] It appears that a chemical spray generally referred to as "mace" was used on the first occasion and that a pepper spray was used on the second occasion. See Declaration of Bean (Docket Entry No. 41). The distinction between the exact types of spray is not significant in this case, and, for the purposes of this Report and Recommendation, the Court shall refer to both types of spray as a "chemical spray."

3

targeted to be sprayed and assert that there is no evidence that the plaintiff exhibited any symptoms of being affected by the spray after the incidents.

With respect to the plaintiff's second claim, the Defendants argue that there is no evidence showing that the plaintiff was denied a medically appropriate diet, that he suffered any kind of injury because medication was passed out by non-medical officers, or that the lack of intercoms in cells at the Justice Center harmed the plaintiff in any manner. With respect to the plaintiff's third claim, the Defendants contend that the undisputed evidence shows that, although a cell in which the plaintiff was housed had a non-functioning toilet, the plaintiff was moved from the cell after a short period of time and officers had instructed the plaintiff to kick on his door to alert them when he needed to use the restroom but he chose to use the non-functioning toilet instead. Finally, the Defendants argue that the plaintiff's allegations regarding his being taken out of his cell wrapped in a blanket do not implicate any of the named defendants and, furthermore, do not rise to the level of seriousness necessary for a constitutional claim.

In response, the plaintiff submits two briefs (Docket Entry Nos. 53 and 54) in which he argues that this matter should be set for trial. He asserts that the use of a chemical spray on inmates was not justified even if the inmates were passing contraband through a broken window and smoking tobacco because the inmates were not presenting a threat of danger to anyone. He further asserts that he suffered pain in his eyes because of the spray but that he did not complain about it because he assumed the pain would go away. The plaintiff contends that the Defendants' argument that he did not suffer an injury from the lack of a proper diet and the lack of an intercom in his cell is irrelevant because these conditions could have resulted in an injury to him. He argues that state law requires that medication be passed out to inmates by medical personnel. The plaintiff contends that the

4

Defendants' argument regarding the cell with the non-functioning toilet "is absurd." Finally, he asserts that he did not have the opportunity in many cases to appeal his grievances and that he was given thirty days "in the hole" on occasion for appealing a grievance and was told that he would get "another thirty days" if he filed another appeal. See Docket Entry No. 53, at 3.[3]

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

---

[3] In his response to the motion for summary judgment, the plaintiff fails to respond to the Defendants' arguments regarding his claim based on being forced to leave his cell covered with a blanket. Accordingly, the Court views this claim as having been abandoned.

5

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

Initially, the plaintiff no longer has a claim for prospective injunctive relief given that he has been transferred from the Justice Center. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-09,

6

103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Blakely v. United States, 276 F.3d 853, 873-74 (6th Cir. 2002); Williams v. Ellington, 936 F.2d 881, 889 (6th Cir. 1991). The plaintiff's past exposure to alleged illegal conduct "does not in itself show a present case or controversy regarding injunctive relief." O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Similarly, the plaintiff's request for declaratory relief lacks merit because there is no longer any actual and continuing controversy between the parties which would cause an immediate and real threat of injury to him. City of Los Angeles, 461 U.S. at 102; Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). There is simply no actual controversy between the parties which calls for a declaration of the rights and other legal relations of the parties. See 28 U.S.C. § 2201; Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984).

With respect to claims for monetary relief, the Court notes that the plaintiff has not rebutted the Defendants' supporting evidence or supported his own response with any actual evidence. The two briefs he filed in response to the motion for summary judgment are merely argument and are not supported by an affidavit or declaration that has been sworn to by the affiant or the declarant. The plaintiff's complaint is likewise unverified. Further, the plaintiff failed to specifically respond to the Defendants' Statement of Undisputed Facts (Docket Entry No. 39) as required by Rule 56.01(c) of the Local Rules of Court.[4] When a motion for summary judgment is made and properly supported under Rule 56 of the Federal Rules of Civil Procedure, such as the motion filed by the Defendants, the non-moving party may not merely rest on unsupported allegations, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of

---

[4] By Order entered September 20, 2013 (Docket Entry No. 46), the plaintiff was specifically advised that, if he wished to dispute the Defendants' Statement of Undisputed Material Facts, he must respond to them in accord with Local Rule 56.01(c).

7

material fact. See Celotex Corp., 477 U.S. at 323-24; Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002); Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). Although the plaintiff is proceeding pro se, his pro se status does not relieve him of the obligation under Rule 56 of the Federal Rules of Civil Procedure to set forth admissible evidence showing that genuine issues of material fact exist which require that the action proceed to trial. This is the threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. Sixty Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). The plaintiff fails to satisfy this basic requirement.

Based on the record that is before the Court, no reasonable jury could find in favor of the plaintiff. Even when the evidence is viewed in the light most favorable to the plaintiff, there is simply no evidence that he was treated in a manner that violated his constitutional rights. Given the lack of evidence supporting his claims, any factual questions that exist fail to rise to the level of genuine issues of material fact that require that this action proceed to trial.

The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon convicted prisoners and requires that prisoners be provided with a level of medical care and housing that is consistent with contemporary standards of decency. See Rhodes v. Chapman, 452 U.S. 337, 347-48, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).[5] In Estelle

---

[5] It is not clear from the record whether the plaintiff was held at the Justice Center as a convicted prisoner or as a pretrial detainee. However, the distinction is not critical for the purposes of the plaintiff's claims. Although pretrial detainees are protected from mistreatment by the Due Process Clause of the Fourteenth Amendment while convicted felons fall within the purview of the Eighth Amendment, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the Eighth Amendment's prohibition against cruel and unusual punishment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 & n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Heflin v. Stewart Cnty., Tenn., 958 F.2d 709, 714 (6th Cir. 1992); Roberts v. City of Troy, 773 F.2d

8

v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." The Supreme Court reiterated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that deliberate indifference by prison officials which subjects a prisoner to inhumane conditions of confinement violates the Eighth Amendment. However, an Eighth Amendment claim requires more than allegations of negligence or even medical malpractice. See Estelle, 429 U.S. at 106; Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). With respect to allegations of unconstitutional prison conditions, conditions which are merely harsh do not violate the Eighth Amendment. Rhodes, 452 U.S. at 347. There must be evidence of "extreme deprivations," Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and only grave deprivations of the civilized measure of life's necessities violates the Cruel and Unusual Punishment Clause. Rhodes, supra; Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004).

The undisputed evidence before the Court does not support a finding that the plaintiff was subjected to medical care or living conditions that fell below constitutional standards. The plaintiff has not set forth any evidence that he was deprived of a medically appropriate diet or that he was treated with deliberate indifference with respect to his diabetic condition. What the plaintiff appears to complain about is that staff provided food items other than orange juice to diabetic inmates who were experiencing low blood sugar levels. See Docket Entry No. 54, at 4. However, the Eighth

---

720, 723 (6th Cir. 1985). Accordingly, claims brought by a pretrial detainee are analyzed under Eighth Amendment standards. See Leary v. Livingston Cnty., 528 F.3d 438, 441-42 (6th Cir. 2008).

Amendment does not mandate that any particular food item be provided to a prison inmate, and deliberate indifference is not shown simply because "alternative procedures might have better addressed [a prisoner's] particular needs." Graham v. County of Washtenaw, 358 F.3d 377, 384 (6th Cir. 2004). There is also no constitutional requirement that jail cells contain intercoms or that medication be passed out to inmates by any specific staff member. Neither of these living conditions implicates a basic necessity of civilized life and, in the absence of evidence that either living condition caused an actual harm to the plaintiff, the plaintiff's mere displeasure with these living conditions does not rise to the level of constitutional concern. The plaintiff's contention that the Defendants did not follow a unspecified state law that requires medical personnel to distribute medication does not raise a constitutional issue. The mere failure of a prison official to follow an internal prison policy or state law is not sufficient to support a constitutional claim under Section 1983. See Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993); Barber v. City of Salem, Ohio, 953 F.2d 232, 240 (6th Cir. 1992).

With respect to the plaintiff's claim that he was housed in a cell that did not have a functioning toilet for four to five days, even if the Court assumes for the purposes of the summary judgment motion that this allegation is true, the evidence before the Court is simply not sufficient to support a constitutional claim. First, there is no evidence before the Court linking this claim to any of the named defendants. A defendant cannot be held individually liable under Section 1983 for constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. Miller v. Calhoun Cnty., 408 F.3d 803, 817, n.3 (6th Cir. 2005); Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Second, even though the Court is troubled by a factual scenario in which an inmate may have been knowingly and

10

purposefully left in a cell with a malfunctioning toilet containing urine and feces,[6] the plaintiff acknowledges that he was moved from this cell after a few days. Conditions of confinement that are temporary in nature rarely rise to the level implicating constitutional concern. See Dellis v. Corrections Corp. of Am., 257 F.3d 508, 511 (6th Cir. 2001). While the odor from the toilet may have been unpleasant, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Further, there is no evidence before the Court showing that the malfunctioning toilet resulted in an actual and substantial risk of serious damage to his health. See Farmer, 511 U.S. at 834; Helling v. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Finally, the plaintiff's own deposition testimony was that he was instructed to kick his cell door if he needed to exit the cell to use the restroom. See Docket Entry No. 40-14, at 19-21. Although the plaintiff testified that he was afraid of having a chemical spray used on him, id., there is no evidence that he was actually sprayed with a chemical spray or otherwise was coerced in any manner into not alerting officers that he needed to use the restroom by kicking the door.

The plaintiff's final claim is that Defendants Bean and/or Allred wrongfully used or participated in the use of a chemical spray at the Justice Center on two occasions. The Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon a prison inmate, Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and the unjustified infliction of bodily harm upon a prisoner gives rise to a claim under 42 U.S.C. § 1983. Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992); Franklin v. Aycock, 795 F.2d 1253, 1258 (6th Cir. 1986).

---

[6] The plaintiff testified in his deposition that when the toilet stopped working his cellmate was removed from the cell but he was left in the cell. See Docket Entry No. 40-14, at 19.

11

However, the mere fact that a prisoner was subjected to physical contact which may have been forceful does not itself show a constitutional violation. Parrish v. Johnson, 800 F.2d 600, 604-05 (6th Cir. 1986). As noted in Whitley, several factors are relevant in determining whether a particular use of force was objectively reasonable or, instead, was wanton and malicious. 475 U.S. at 320-21. These factors include the extent of injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of the forceful response. Id.

The use of a chemical spray is not per se unreasonable under the Constitution. See Adams v. Metiva, 31 F.3d 375, 384 (6th Cir. 1994). The analysis for the use of such force is essentially the same as that for the use of more traditional forms of physical control, turning upon the totality of the circumstances, including the prisoner's conduct and the defendant's reasonable perception of the scenario. Id. at 386.

In the instant action, the basic facts of the two incidents about which the plaintiff complains are essentially undisputed. In the first incident, inmates in a multi-inmate cell, in which the plaintiff was housed, were observed passing contraband through a broken window in the cell and were also observed sticking their hands out through the window. See Declaration of Bean (Docket Entry No. 41) and Declaration of Allred (Docket Entry No. 42). Upon investigation, jail officers observed that a pulley system had been rigged with fishing line so that contraband could be passed into the Justice Center and that smoke was coming out the cell window. Id. In response to these facts, Defendant Allred sprayed a single, one-second burst of a chemical spray into the cell from outside the broken window. See Affidavit of Allred. The officers then entered the cell to investigate, confiscated tobacco, rolling papers, and a lighter, removed three inmates from the cell for security

12

reasons, and removed the one inmate who complained of being hit by the chemical spray. See Affidavit of Bean and Affidavit of Allred. Neither officer noticed any lingering traces of the chemical spray in the cell. Id.

In the second incident, Defendant Bean received another report of contraband being passed into the Justice Center through a broken cell window. See Affidavit of Bean. Bean asserts that he then went to the outside of the broken window and sprayed a single, one second burst of a chemical spray at the hole in the window so that a residue of the spray was left on the edges of the hole in order to deter inmates from pulling contraband through the hole or passing their hands through the hole. Id.[7] Bean declares that no inmate was hit with the chemical spray and no inmate claimed to have any problems as a result of the chemical spray. Id.

The introduction of contraband into the Justice Center through broken cell windows created a legitimate security concern. The manner of response by the officers in this case was reasonably directed at this concern and was minimal in both its scope and severity. Furthermore, there is no evidence that the uses of force were directed at any particular inmate or were done in an excessive or malicious manner. The plaintiff argues that he was not acting in a violent or threatening manner and the Defendants were unjustified in using force against him. The plaintiff is simply wrong. The daily operation of a prison facility requires constant and vigilant attention to issues of security, good

---

[7] The plaintiff's deposition testimony of this incident differs from the description of the incident given by Defendant Bean in that the plaintiff testified that Bean sprayed the chemical spray around the edges of the hole from inside the cell, not from outside the cell as declared by Bean. See Docket Entry No. 40-14, at 13. However, the exact location from where Bean applied the chemical spray is not significant and this factual question does not rise to the level of a genuine issue of material fact. Indeed, the plaintiff's version is even less supportive of his claim since Defendant Bean would have been the individual closest to the chemical spray when it was applied and would have suffered the most direct exposure to the spray.

13

order, and the discipline of an institution, and the discretion of how to deal with these and other related issues is best left to the expertise of prison officials. See Thornburgh v. Abbott, 490 U.S. 401, 404-08, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Bell v. Wolfish, 441 U.S. 520, 546-47, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

There is nothing in the Constitution that requires correctional officers to use the least intrusive steps possible in their efforts to restore discipline and order, nor does a prison inmate have to be a significant threat to either prison staff or other inmates before some measure of physical force can be used against him in order to accomplish a legitimate penological objective. See Lockett v. Suardini, 526 F.3d 866, 875 (6th Cir. 2008); Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992). The fact that the plaintiff subjectively believed the he was not a security threat and that the Defendants' actions were excessive is of no constitutional relevance. Even when everything the plaintiff alleges is taken as true, he fails to show a constitutional claim because the Defendants' actions were justified and reasonable based on the record before the Court.

The Court's finding that there is no evidence that a constitutional violation occurred is sufficient to warrant summary judgment in favor of the Defendants. As such, the Court declines to address the Defendants' lack of exhaustion defense and the qualified immunity defense. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Jones v. Byrnes, 585 F.3d 971, 975 (6th Cir. 2009). The Court's finding of a lack of evidence is also sufficient to support dismissal of any municipal liability claim to the extent that the Defendants are sued in their official capacities. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

## RECOMMENDATION

Based on the forgoing, the Court respectfully RECOMMENDS that the Defendants' Motion for Summary Judgment (Docket Entry No. 37) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal NOT be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge